1   Patrick Halpin
2   2030 Arriba Way
    Santa Maria, CA 93458
3   805-310-4161
    phalpin@outlook.com
4

    Patrick Halpin, IN PRO PER

FILED
CLERK, U.S. DISTRICT COURT

JUL - 8 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

7           UNITED STATES DISTRICT COURT

8   CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

9                    CV14-5279 E   By Fax

10  NAME OF PLAINTIFF,                )  Case No:
                                      )
11          Patrick Halpin            )  **PETITION TO COMPEL ARBITRATION**
                                      )
12          VS.                       )
                                      )
13  NAME OF DEFENDANT,                )
                                      )
14          Equifax Information Services )
                                      )
15  LLC                               )
                                      )
16  _____)

17

18                    **VERIFIED COMPLAINT**

19      Plaintiff Patrick Halpin ("Halpin") hereby files this Petition to

20  Compel Arbitration against Defendant Equifax Information Services LLC

21  ("EQFX") pursuant to the Federal Arbitration Act ("FAA") 9 U.S. Code §

22  2 and 9 U.S. Code § 4.

23                      **INTRODUCTION**

24      Patrick Halpin filed an arbitration claim with American

25  Arbitration Association ("AAA") (https://www.adr.org/) against EQFX to

26  resolve a dispute between Halpin and EQFX.  As of July 07, 2014 EQFX

27  has refused to arbitrate a dispute between the two parties.

28



PAID

JUL - 8 2014

Clerk, US District Court
COURT 4612

PETITION TO COMPEL ARBITRATION - 1

**PARTIES**

1.   Patrick Halpin is a natural person residing in Santa Maria, Santa Barbara County, California.

2.   Equifax Information Services LLC is regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of furnishing to their parties reports of consumers' credit histories, commonly referred to as "credit reports" and defined as "consumer reports" under 15 U.S.C. § 1681a(f).

3.   Equifax Information Services LLC is a limited liability company incorporated in the State of Georgia.

4.   The registered agent for service of process is Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

5.   Equifax Information Services LLC acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, representatives and insurers.

**JURISDICTION AND VENUE**

6.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.   Halpin claims EQFX violated the Fair Credit Report Act 15 U.S.C. § 1681 et seq ("FRCA").

8.   This court has jurisdiction over FCRA claims pursuant to 15 U.S.C. § 1681p.

9.   Accordingly, resolution of the claims by Halpin involve questions of federal law under 28 U.S.C. § 1331.  This Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 with respect to any of the claims made by Halpin not preempted by federal law.

10.   Venue is proper pursuant to 28 U.S.C. § 1391(b).

**FACTUAL ALLEGATIONS**

11.   Pursuant to the FCRA, Halpin has disputed several tradelines contained in his EQFX credit report of which,

    (a) EQFX has failed to maintain reasonable procedures to assure maximum possible accuracy of the information in reports concerning Halpin.

    (b)  EQFX has failed to review and consider all relevant information submitted by Halpin.

    (c)  EQFX has failed to mark accounts as disputed as required by the FCRA.

    (d)  EQFX deleted certain disputed tradelines only to reinsert them at a later date.

13.   In the most recent EQFX arbitration provision dated April, 2013, the arbitration provision provides, in relevant part, that both parties are required to arbitrate any claims brought by the either party:

    **"Binding Arbitration. Either You or Equifax may, without the other's consent, elect mandatory, binding arbitration of any Claim (as defined below) raised by either You or Equifax against the other. As used in this arbitration provision, the term "Claim" or "Claims" means any claim, dispute, or controversy between You and Us regarding any aspect of Your relationship with Equifax, including but not limited to any Claim arising from these Terms of Use or arising from Your use of the Products or this Site or any information You receive from Us, whether based on contract, statute, common law, regulation, ordinance, tort, or any other legal or equitable theory regardless of what remedy is sought. Additionally, for purposes of this arbitration provision**

**"Equifax" or "Us" will include Equifax's Suppliers, parents,**
**subsidiaries, affiliates, successors, assigns, employees, agents,**
**and any third party providing products, services, or benefits in**
**connection with a Product provided to You. The term "Claim" shall**
**have the broadest possible construction."**

See exhibit "A" attached herein and incorporated by reference.

14.   The EQFX arbitration provision allows consumers to opt-out within 30 days of first use of any EQFX service by sending mail to EQFX.  Halpin at no time notified EQFX by mail within 30 days of using EQFX services that he opts out of the arbitration provision and is bound by the entire EQFX arbitration provision.

15.   The contract provides for a choice of arbitration administrators: "The party filing a Claim in arbitration must select either the National Arbitration Forum ("NAF") or the American Arbitration Associate ("AAA") to administer the arbitration.

16.   In July, 2009, the Minnesota Attorney General filed a lawsuit against NAF alleging that NAF was far from impartial and had conflicting ties to major collection law firms that represented credit-card companies.

17.   One week after the Minnesota Attorney General filed its lawsuit against NAF, NAF agreed to stop accepting any new consumer arbitrations or in any manner participate in the processing or administering of new consumer arbitrations.  See exhibit "B" attached herein and incorporated by reference

18.   As of the April, 2013, EQFX arbitration provision, EQFX continues now for almost five years to list NAF as a choice to arbitrate any consumer dispute which EQFX knows is false and misleading.

19.   The EQFX arbitration provision also provides AAA as a choice to resolve any disputes.

20.   Frustrated with EQFX not complying with the FCRA, Halpin filed a Demand for Arbitration with the AAA on March 03, 2014 which was sent USPS Certified Mail (70100780000043273664).  See exhibit "C" attached herein and incorporated by reference.

21. On March 07, 2014 Halpin was notified by AAA that EQFX has failed to adhere to AAA Consumer Arbitration claims, which AAA has asked that EQFX remove AAA from its arbitration provision and closed the requested Demand for Arbitration.  See exhibit "D" attached herein and incorporated by reference.

22.   On the date of May 28, 2014, and pursuant to 9 U.S. Code § 4, Halpin gave by USPS Certified Mail (70100780000043273695) to Equifax's Chief Legal Officer John J. Kelley III five days' notice.

23.   As of July 07, 2014 EQFX has ignored all correspondence from Halpin's Demand for Arbitration.

24.   In *CompuCredit Corp. v. Greenwood, ---S.Ct.---, 2012 WL 43514 (U.S. Jan. 10, 2012)* the Supreme Court has again enforced an arbitration clause in a consumer contract. In doing so, the Court solidified the holding of its recent decision of *AT&T Mobility v. Concepcion, 563 U.S. 131 S.Ct. 1740 (2011)* that under the Federal Arbitration Act arbitration agreements must be enforced according to their terms.

25.   CompuCredit, however, does not merely repeat Concepcion. The Court in Concepcion held that the FAA preempts state law refusing to enforce arbitration terms. The Court in CompuCredit expands this by holding that the FAA also trumps federal law implying a statutory right to a civil action in a court of law.

26.   The EQFX Product Agreement and Terms of Use is a unilaterally written contract of adhesion that was presented to Halpin as a "take it or leave it" contract.

27.   The EQFX arbitration provision requires consumers to arbitrate any dispute but has failed to adhere to AAA Consumer Arbitration rules and knows NAF cannot arbitrate any dispute.

28.   EQFX has and continues to refuse to comply with their own contract of adhesion; specifically, by refusing to comply with its own arbitration agreement.

### PRAYER FOR RELEIF

Accordingly, the dispute between Halpin and Equifax are arbitrable matters, Halpin prays this Court will Order Equifax to comply with its own contract and that Equifax comply with all AAA Consumer Arbitration provisions.

WHEREFORE, the Plaintiff, Patrick Halpin, prays that an order be made and entered herein directing that arbitration between Halpin and EQFX proceed in the manner provided for in the arbitration agreement; that this honorable court stay this action until the completion of the arbitration claim at hand and that Halpin obtain such other or further relief as the this honorable court may deem just and proper; together with the costs and disbursements of this complaint.

DATED: July 07, 2014                 BY: _____
                                            Patrick Halpin

# EXHIBIT "A"

**(Equifax Terms of Use)**

**EQUIFAX**  PERSONAL   BUSINESS   GOVERNMENT   ABOUT US ▾        📞 Support   📶 Blog   🌐 ▾   🔍



PRIVACY AND TERMS                    ▼

# Terms of Use

What are the terms of use for Equifax  |  Product Agreement and terms of Use  |  Site Terms of Use

## What are the terms of use for Equifax?

Below you will find our Product Terms of Use and the Site Terms of Use when using the Equifax website. You can also review our <u>Privacy Policy</u>, which provides information regarding our handling of any personal information that you may provide to us.

BACK TO TOP

## Product Agreement and terms of Use

Last Revised: April 9, 2013

THIS PRODUCT AGREEMENT AND TERMS OF USE ("AGREEMENT") CONTAINS THE TERMS AND CONDITIONS UPON WHICH YOU MAY PURCHASE AND USE OUR PRODUCTS THROUGH THE WWW.EQUIFAX.COM, WWW.IDENTITYPROTECTION.COM AND WWW.IDPROTECTION.COM WEBSITES AND ALL OTHER WEBSITES OWNED AND OPERATED BY EQUIFAX AND ITS AFFILIATES ("SITE"). YOU MUST SCROLL DOWN, READ AND ACCEPT THE TERMS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT CONTAINED IN SECTION 35 BELOW, BEFORE YOU WILL BE PERMITTED TO REGISTER FOR AND PURCHASE ANY PRODUCT FROM THIS SITE. BY REGISTERING ON THIS SITE AND SUBMITTING YOUR ORDER, YOU ARE ACKNOWLEDGING ELECTRONIC RECEIPT OF, AND YOUR AGREEMENT TO BE BOUND BY, THIS AGREEMENT.

MANY GOVERNMENT RECORDS ARE AVAILABLE FREE OR AT A NOMINAL COST FROM CERTAIN GOVERNMENT AGENCIES. IN ADDITION, CREDIT REPORTING AGENCIES ARE REQUIRED BY LAW TO GIVE YOU A COPY OF YOUR CREDIT RECORD UPON REQUEST AT NO CHARGE OR FOR A NOMINAL FEE. NONE OF THE PRODUCTS OFFERED THROUGH THIS SITE ARE INTENDED AS A SUBSTITUTE FOR THE CONSUMER CREDIT INFORMATION THAT MAY BE AVAILABLE TO YOU WITHOUT CHARGE. PRIOR TO PURCHASING ANY PRODUCT, YOU SHOULD REVIEW THE FAIR CREDIT REPORTING ACT DISCLOSURES CONTAINED IN THIS AGREEMENT OR VISIT WWW.ANNUALCREDITREPORT.COM FOR FURTHER DETAILS REGARDING YOUR RIGHT TO OBTAIN A COPY OF YOUR CONSUMER CREDIT FILE.

1. PROVIDERS OF PRODUCTS. The products and product features ("Product" or "Products") available via this Site are provided by Equifax Consumer Services LLC ("Equifax") or, in the case of the Automatic Fraud Alert feature ("AFA"), fulfilled by Equifax on behalf of Equifax Information Services LLC. We may also partner with other companies ("Suppliers") to provide Products to you or sell you a Product provided by a Supplier. Equifax and its Suppliers are referred to in this Agreement as "We," "Us," and "Our." You, the person visiting and utilizing this Site, are referred to as "You," "Your" or the "Member".

2. PERSONAL INFORMATION; AUTHORIZATION. As needed to provide Products to You, You authorize and instruct Us to obtain, monitor, and compile Your: (i) credit information from one or more credit reporting agencies; (ii) "non-public personal information", "personal information", and/or "highly restricted personal information" about or concerning You as defined by the Gramm-Leach-Bliley Act (15 U.S.C. sec 6801 et seq); and (iii) other personal information. By placing Your order You acknowledge and agree that Your access to the Products and any consumer credit information contained therein is subject to Your prior written authorization and Our verification of Your identity. As such, You understand and agree that by submitting Your order, You are providing "written instructions" in accordance with the Fair Credit Reporting Act ("FCRA") for Us to obtain credit information from the personal credit report maintained by one or more of the three nationwide credit reporting agencies and You hereby authorize Us to access Your personal credit information in order to provide the Products.

3. REGISTRATION; USE OF PRODUCTS. In order to purchase Products, You must complete the registration process and become a Member. You will also be required to provide valid credit card information, unless You are activating a promotional code. You may register to purchase Products from this Site only on behalf of Yourself and by doing so, You acknowledge and agree that it is illegal to order credit information about anyone else. By registering, You further certify that You are eighteen (18) years or older and that all of the information provided incident to Your registration is true, accurate, complete and up to date. You further agree to abide by all of the terms and conditions concerning Your use of the Products, including any specific terms and conditions relating to particular Products that You purchase. We provide Products and related information solely to assist You in understanding Your financial and credit status for Your personal benefit and You agree that You will not use the Products for any other purpose, especially a commercial purpose. You must also establish a user identification ("User ID"), password and personal identification number ("PIN") and You agree to keep them strictly confidential and not to share them with others.

4. NOT A CREDIT REPAIR ORGANIZATION OR CONTRACT. Equifax is not a credit repair organization, or similarly regulated organization under applicable law and does not provide any form of credit repair advice or counseling. Equifax offers You access to Your credit report and other credit-related information Products, but We do not offer, provide, or furnish any Products, or any advice, counseling, or assistance, for the express or implied purpose of improving Your credit record, credit history, or credit rating. By this We mean that We do not claim We can "clean up" or "improve" Your credit record, credit history, or credit rating and You acknowledge and agree that You will not purchase, use, or access any of Our Products or the Site for such purposes. These items (credit record, history, and rating) are based on Your past or historical credit behavior, and accurate and timely adverse credit information cannot be changed. If You believe that Your credit report contains inaccurate, non-fraudulent information, it is Your responsibility to contact the relevant credit reporting agency, and follow the procedures established by the various credit reporting agencies related to the removal of such information.

5. YOUR RIGHT TO OBTAIN A CREDIT REPORT FREE OF CHARGE. None of Our Products are intended to substitute, or constitute an offer for any free credit report or similar consumer disclosure that may be available to You without cost or obligation under federal or state law. Prior to purchasing any Product via this Site, You should carefully review Your right to obtain a free copy of Your credit report once every twelve (12) months from each of the three nationwide consumer reporting agencies by visiting www.annualcreditreport.com. A more complete description of Your rights to obtain or gain access to your consumer credit information without charge is contained in the "Additional Credit Report-Related Disclosures" In Section 31 of this Agreement.

6. CREDIT SCORES. Unless otherwise indicated, all credit scores furnished with Our Products are Equifax Credit Scores. By this, We mean that all credit scores are prepared by Equifax and make use of the Equifax Risk Score, which is a proprietary credit score model developed by Equifax. Although the Equifax Risk Score is sometimes used by lenders, it is unlikely that Your particular lender with use the Equifax Risk Score. When prepared and delivered to You as part of any Product, The Equifax Credit Score is provided solely to help You understand how lenders may evaluate Your overall credit risk. Therefore, nothing in any of Our Products is an endorsement or a determination of a person's qualification for a loan, or any other extension of credit. Each lender has specific underwriting standards, so You should not assume that You will receive the same evaluation, credit terms or conditions. Equifax does not represent that the Equifax Credit Score is identical or similar to any other credit score or score

Terms of Use | Equifax

model. Moreover, any estimated score changes predicted by Our Products are only estimates and are provided for educational purposes solely to enable You to determine how future financial decisions (e.g., obtaining a new car loan or mortgage) might impact your credit score. In all instances, the information We use to calculate Your Equifax Credit Score is derived from one or more credit reports produced by EIS or one of the other national credit reporting bureaus. The consumer credit information contained in these credit reports reflects the latest information attributed to the pertinent credit reporting agency. Recent activity may not yet be reflected in Your credit report. If not, this activity will not be reflected in Your Equifax Credit Score. In addition, Your Equifax Credit Score may change every time new information is added to or removed from a credit report as well as with the passage of time.

7.  **MEMBERSHIP; PAYMENT AUTHORIZATION.** With the exception of Our Report Products, all of Our Products require that You establish a continuing membership. This form of membership is sometimes referred to as a "continuity plan." While the initial term of membership associated with Our Products varies, most memberships are effective for: (a) under the monthly plan, a period of one (1) month following Your initial enrollment date, or (b) under the annual plan, a period of twelve (12) months following Your initial enrollment date. In each case, Your initial membership term will be clearly defined in the Offer Details and Your purchase confirmation. Once established, all memberships (regardless of duration) automatically renew indefinitely without further action by You, and the applicable membership fee is automatically charged to You at the time of renewal in accordance with the payment terms to which You agreed. We reserve the right to increase or decrease the membership fee associated with Your Product from time to time with or without notice and You agree that unless You cancel Your membership prior to the effective date of any such fee increase, You will be charged the new membership fee.

8.  **FEES AND CHARGES; PAYMENT SOURCE.** By placing Your Product order, You authorize Us to charge Your credit card or other account that You have designated for such purpose ("Payment Source"). In the case of Products other than Report Products, You further authorize Us to keep your membership current by automatically charging Your designated Payment Source for the then current fees associated with the monthly, annual or other periodic renewal term established at the time of Your initial enrollment. Except in the case of Report Products, Your membership will continue or renew automatically and You will be charged the then current membership fee associated with Your Product until You cancel. You agree to pay for the Products, in U.S. dollars, using the Payment Source provided at the time of registration. In addition, you authorize Us to attempt to automatically update Your Payment Source if the information We have on file is no longer valid, and if We are successful in obtaining updated credit or debit card information, We will update Your records accordingly and charge any updated Payment Source using the updated information. In the event that We are unable to charge and/or update Your Payment Source, We may suspend access to Your Product and if You fail to provide Us with a valid Payment Source, Your Product will be subject to termination with or without notice. We are not responsible for any overdraft/over-the-limit charges or bank fees triggered by Your order being processed.

9.  **FREE TRIALS; CONVERSION TO PAID MEMBERSHIP.** Whenever offered, all free trials of Our Products require that You enroll as a Member. This enrollment obligates You to continue Your membership beyond the expiration of the free trial period unless You take the steps necessary to cancel Your membership. You should carefully consider these obligations before attempting to enroll in any free trial. As part of any trial enrollment, You will be required to provide Us with a valid Payment Source. Prior to fulfilling Your order under any free trial, a prior authorization may be requested from the Payment Source to ensure it is valid, but We will not bill Your account until the free trial period has expired and provided that You have not yet cancelled your trial membership. In the event that You wish to continue Your membership beyond the trial period, do nothing and Your membership will automatically continue without interruption and the applicable fee will be billed to the Payment Source provided at the time of enrollment. You may cancel your trial membership at any time during the free trial period without charge or further obligation by calling our Customer Service Center 24/7 at 1-866-807-7461. We reserve the right to impose quantity limits to Free Trials of Our Products and We may refuse to register You to obtain any of Our Products for any reason, including any of Our Products that may be offered by means of a Free Trial.

10. **PRODUCT CANCELLATION AND REFUNDS.** You may cancel any subscription-based Product at any time. To cancel Your membership, please contact our Customer Service Team 24/7 at 1-866-807-7461. In the event that You cancel Your membership, You may be entitled to a pro-rated refund for any subscription Product purchased but not yet provided. For additional information regarding how to cancel Your Product, go to https://help.equifax.com/app/answers/detail/a_id/31. All sales of Report Products are final, and You will not be entitled to a refund for any Report Product once it is delivered to You.

11. **CHANGES TO PRODUCTS, PRICING, AND TERMS; TERMINATION.** We may change the prices for Our Products at any time, with notice, and You will be charged the new price for all future purchases or renewals of Products. We may not offer every Product on every Site and we may also modify or discontinue any of Our Products or this Site (or any portion thereof) or cancel, suspend or terminate this Agreement for any reason with or without notice. If we do cancel this Agreement or any Product You have purchased, We will give You a pro-rated refund for any Products purchased but not yet provided.

12. **PRODUCT AVAILABILITY.** Certain Products and/or Product features may not be offered, applicable or available to You based on residency, age or other eligibility criteria or factors. In the event that a Product is not available at the time of enrollment, You will be notified during the course of the registration process and your registration will not be accepted. In such cases, You may be advised of one or more alternative Products, to the extent that other Products are available. In the event that You are advised of the availability of alternative Products, You should carefully evaluate any such Product to determine its suitability. In addition to the foregoing, We reserve the right to reject Your Registration for any reason. We may also reject any Product order for any reason. By registering on this Site, You agree that We will not be liable to You for loss or damage that may result from Our rejection of any order that You may attempt to place.

13. **PRODUCTS VARY.** Our Products do not include the same features and benefits. Prior to purchasing any Product, You should evaluate the features and benefits included in each Product by reviewing the Product descriptions and other Product literature contained in the Site. Should You have any questions regarding Our Products, You should contact Our Customer Service Team at 1-866-807-7461 prior to purchasing any Product. If You are already a Member, please visit the Site to obtain a complete description of Our Product, the features it contains, and instructions regarding how to use it. If You are already a Member and subsequently determine that another Product may be more suitable for Your needs, then Our Customer Service Team may be able to assist You in substituting Your current subscription Product for another Product. Note that such Substitutions may result in the imposition of a higher membership fee.

14. **ACTIVATION/PROMOTIONAL CODES.** If You are using an activation or promotional code ("Code") that You received as part of a third party data breach notification, gift certificate, or a promotional offer made available by Us, You will be required to provide Your Code during the course of Your enrollment process in order to complete Your order for the Product that corresponds to Your Code. All Codes contain a predetermined expiration date beyond which they will no longer be valid. Whenever a Code is provided, it is accompanied by a notification letter or other instructions and Product information. Please review this information carefully prior to attempting to activate Your Code. In the event that You have any questions or encounter difficulty completing Your registration or Product order, please contact Our Customer Service Team at 1-866-807-7461. Gift certificates purchased by You at the Site are Products and are subject to this Agreement, except for any terms that may be specifically excluded. Gift certificates are also subject to the following additional terms. Each gift certificate (i) expires on the expiration date stated therein, except where prohibited by applicable law; (ii) must be redeemed through the Site for the purchase of the Product specified therein; and (iii) is not redeemable for cash and cannot be returned for a cash refund. If the recipient's order exceeds the face amount of the gift certificate, the recipient must pay for the balance with a credit or debit card. The Product received upon redemption is subject to this Agreement, which the recipient must accept in order to redeem the gift certificate. We are not responsible for lost or stolen Codes.

15. **ALL PRODUCTS REQUIRE ELECTRONIC COMMUNICATIONS.** Unless otherwise noted, Our Products are internet-based and in order to access Our Products You must have: an internet browser that supports 128-bit encryption; an email account and appropriate email software; a personal computer, operating system and connection to the internet, or in the case of Our mobile Product features, a wireless device, software and connection to the internet capable of supporting the foregoing; and sufficient electronic storage capacity on Your computer's hard drive or other data storage unit or a printer that is capable of printing from Your browser and email software. As such, You understand and agree that this Agreement will be entered into electronically, and that the following information ("communications") will be provided by Us to You by electronic means: this Agreement and any amendments, modifications or supplements to it; any initial, periodic or other disclosures or notices provided in connection with the Products, including without limitation Our privacy policy, all regulatory disclosures, and all communications related to the Products. You may request a paper copy of any legally required notice, withdraw Your consent to receive communications electronically, or change Your email or postal address for receipt of communications, by calling Our Customer Service Team at 1-866-807-7461 or sending Your request by email to customersupport@equifax.com. In furtherance of the

foregoing, You expressly consent to receive all communications regarding Your membership electronically, either by e-mail or by notices posted on the Site and You agree that any requirement that a notice, disclosure, agreement, or other communication be sent to You by Us in writing is satisfied by such electronic communication. In order to ensure Your continuing access to Your Product, You agree to update Your email address on file whenever Your email address changes. You further agree that we may send You e-mails which include notices about Your membership as well as information pertaining to the Products, such as featured Products or new Product offerings, and surveys. Please note that mobile messaging and data rates may apply and You should consult with Your Carrier prior to enabling any mobile feature associated with Your Product.

16. NO GUARANTEE OF PRODUCT AVAILABILITY. Because of the nature of Internet and online communications, this Site or the Products may not perform as intended despite Our efforts, those of Your Internet service provider, and You. We do not guarantee uninterrupted or error free operation of Your Product or this Site. In addition, Your use of a Product that is excessive or in a manner not contemplated by this Agreement may also result in a Product not performing as intended despite Our efforts. We will use reasonable efforts to maintain operation of the Site and availability of the Products at all times. If there is a system error or other problem concerning Your Product, You agree to promptly notify Us of the same, We will try to correct the error, but You will not be entitled to any money for any system error of any type except for monies You paid for Products that We do not provide.

17. SUBSCRIPTION-BASED PRODUCTS. The Products offered through this Site consist of membership Products (sometimes referred to as "continuity plans") and one-time Report Products. Unless otherwise indicated, all Products are subscription-based. By "subscription-based" We mean that all such Products and associated Product features are offered pursuant to memberships that automatically renew indefinitely without further action by the Member, and the corresponding membership fee is charged to the Member on the same day of each subsequent renewal term (monthly or annually, as the case may be). So long as the subscription-based membership remains active, each Member is entitled to all of the features, benefits, and privileges associated with membership until the membership is cancelled by the Member or otherwise terminates or expires. Upon cancellation, Members immediately loses access to all of their credit data, analyses or similar information housed within the Site and all other Product benefits. All of Our subscription-based Products renew automatically, but no Product is offered pursuant to terms which prevent the Member from cancelling the Product prior to the expiration of the then-current term. Accordingly, YOU MAY CANCEL YOUR SUBSCRIPTION-BASED MEMBERSHIP AT ANY TIME BY CALLING OUR TOLL-FREE NUMBER AT 1-866-807-7461 OR BY NOTIFYING US IN WRITING AT EQUIFAX PERSONAL SOLUTIONS, P.O. BOX 105496, ATLANTA, GEORGIA 30348, ATTENTION: PRODUCT CANCELLATION AND ANY SUCH CANCELLATION REQUEST WILL BECOME EFFECTIVELY PROMPTLY UPON OUR RECEIPT OF YOUR REQUEST. Depending on when Your cancellation becomes effective, You may be entitled to a pro-rated refund of any fees You have paid in accordance with our then-current refund policy set forth in the Site.

18. REPORT PRODUCTS. If You purchase a one-time Report Product, the resulting report will be accessible online for a period of thirty (30) days from the date You order the report. If You would like to be able to refer to the report beyond the 30 day period that it is available online, You must print the report within the 30 day period. The report will not update during the 30 day period that it is available online. If You order a Report Product while You are an active Member of a subscription-based Product, You may view the resulting Report Product online (but do not update) for 12 months from the date that You ordered the report, provided that Your maintain Your membership during that time. If You cancel Your enrollment, Your report will no longer be available as of the date you cancel and You must print the report prior to cancellation if You would like to be able to refer to Your report beyond that time. If you select a purchase option such as Complete Report Pack that features a multi-report product that allows You to order multiple reports for a single price during a defined time period (usually 90 days), You must order all of the reports within the specified timeframe. If You fail to order all of the reports that are available under the multi-report product, the You will forfeit Your ability to obtain further reports.

19. CREDIT MONITORING PRODUCTS AND PRODUCT FEATURES. When offered or included as part of Our Products, "Credit Monitoring" monitors one or more of Your consumer credit files, depending on the type of Product (e.g, single bureau monitoring, tri-bureau monitoring, etc.) You have purchased. In each case the credit file or files that are monitored on Your behalf are separately owned and/or maintained by one or more of the three nationwide credit reporting agencies: Equifax Information Services, LLC, TransUnion LLC, and Experian. In the case of all Products which feature Credit Monitoring, the Credit Monitoring You request and authorize monitors the credit file (or files in the case of tri-bureau Products) most closely identified with You based on identifying factors such as first, last, and middle name, date of birth, Social Security Number, and current and former addresses. Credit Monitoring will not advise You if an item of identifying information is contained in the credit file of another person and in no event will Credit Monitoring ever monitor, compare or cross-reference Your credit file(s) with the credit file(s) of another person, nor will it ever provide You with any information contained in another person's credit file(s).

20. IDENTITY THEFT PRODUCTS AND PRODUCT FEATURES. Certain Products contain features that may be assistance to You in helping to prevent, detect and/or respond to incidents involving certain forms of theft or misuse of Your personal information ("Identity Products"). We offer several Identity Products and not all versions of Our Identity Products include the same features. Prior to purchasing any Identity Product, You should carefully review the Product Detail Page within the Site that is associated with each Identity Product for a complete list of included features and an explanation of the available features and limitations. In addition, You should also consider the availability of information, tools, and resources that may be available to You without charge or for a nominal fee in the event that You suspect that Your identity has been stolen or compromised, or may be subject to, possible theft or misuse. You can learn more regarding the availability of such resources, by visiting the website maintained by the Federal Trade Commission at http://www.ftc.gov. Our Identity Products are information Products that consist of one more Product benefits that deliver information to Members to help them minimize the risk of identity theft and to prepare them to respond in the event that a real and/or suspected act of "Identity Theft" should occur. For purposes of this Agreement, "Identity Theft" means that Your name, address, Social Security number, credit card, debit card or other personal identifying information has been lost, stolen or was used without Your knowledge to commit fraud or other crimes. The brief summary provided in this Section is not intended to provide a comprehensive summary of Our Identity Products, nor are the descriptions of Our Identity Products contained in this Agreement intended to provide a complete list of all of the terms, conditions, exclusions and limitations that may apply with respect to any particular Identity Product. Please review the comprehensive Product descriptions and associated Product literature contained in the Site for a more complete description of Our Identity Products prior to ordering any Identity Product. BY PLACING YOUR ORDER FOR ANY IDENTITY PRODUCT, YOU ACKNOWLEDGE AND AGREE THAT NO PRODUCT IS CAPABLE OF PREVENTING OR DETECTING ALL FORMS OF IDENTITY THEFT. YOU ALSO AGREE THAT YOU WILL TAKE REASONABLE PRECAUTIONS TO PROTECT AND SAFEGUARD YOUR PERSONAL AND FINANCIAL INFORMATION AND AVOID DISCLOSURES OF ANY SUCH INFORMATION TO ANY INDIVIDUAL OR ENTITY, KNOWN OR UNKNOWN, THAT COULD BE REASONABLY EXPECTED TO IMPROPERLY USE SUCH INFORMATION. EQUIFAX AND ITS DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, SUPPLIERS, LICENSORS, AND/OR AFFILIATED COMPANIES EXPRESSLY DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE IDENTITY PRODUCTS AND WE DO NOT WARRANT THAT THEY WILL MEET YOUR REQUIREMENTS OR THAT THEIR OPERATION WILL BE UNINTERRUPTED OR ERROR FREE. NONE OF THE IDENTITY PRODUCTS PROVIDED BY US UNDER THIS AGREEMENT CONSTITUTE A POLICY OR CONTRACT OF INSURANCE AGAINST IDENTITY THEFT AND/OR THE CONSEQUENCES OF IDENTITY THEFT AND OUR LIABILITY TO YOU WITH RESPECT TO ANY LOSSES YOU MAY SUFFER OR INCUR AS A RESULT OF ACTUAL OR SUSPECTED IDENTITY THEFT ARE LIMITED TO THE PRODUCT FEATURES EXPLICITLY SET FORTH IN THIS AGREEMENT AND THE IDENTITY PRODUCT DESCRIPTION CONTAINED IN THE SITE. In addition, We reserve the right to request that You provide corroborating evidence with respect to any incident of Identity Theft of which We are notified, including signed affidavits, law enforcement or governmental agency reports, or other corroborating evidence, In the event that You fail to provide any requested corroborating evidence, We reserve the right not to provide You with any Product features or benefits normally available as part of Your Product. If You cancel Your Identity Product membership, We are no longer obligated to provide any of the Product benefits associated with Your membership, regardless of whether or not a particular act of real and/or suspected Identity Theft occurred while Your identity Product membership was active.

21. IDENTITY THEFT INSURANCE. Certain Products include an identity theft insurance benefit for active Members. This identity theft insurance benefit for active Members is underwritten and administered by Chartis and its affiliates under a master group policy issued to Equifax for the benefit of its Members. A summary of the terms of coverage are located at https://help.equifax.com/app/answers/detail/a_id/780/. The complete insurance policy is from Us on request. Chartis administers all claims and We shall have no responsibility with respect to such identity theft benefit.

22. FAMILY PLAN PRODUCT. The Equifax Family Plan is a subscription-based Product that allows one adult ("Primary Member") to purchase a single membership that enables a second adult ("Added Member") to enjoy the benefits associated with one of our most common subscription-based Products (Equifax Complete Premier) at a discount to the normal retail price each adult would pay for an individual membership for the Product (Equifax Complete Premier) that corresponds to the features and

benefits associated with the Family Plan Product. In addition to these possible financial savings, the Family Plan Product offers two Product features that are unique to Our Products. The first benefit is the ability of either adult to authorize Us (by way of an affirmative opt-in election and authorization that is revocable at any time) to share Alerts that are the result of Credit Monitoring. No other form of credit information or personal information can be shared or disclosed. The second benefit associated with Family Plan is the ability of the Primary Member to monitor up to four (4) of their minor children by means of the "Child Monitoring" Product feature described in Section 23 below. When You enroll under the Family Plan Product (as the Primary Member or Added Member, as the case may be) and authorize Us to share Your Alerts with the other adult Member, You are the "Subject". When the other adult Member makes their Alerts available to You for You to review, You are the "Reviewer." The election to share Alerts under the Family Plan Product is strictly optional and does not need to be reciprocal. By this, We mean that the Shared Alerts option can be configured such that one, both or neither of the adult Members may choose to share Alerts. In no event will You be able to share Your Alerts or view the other Member's Alerts unless We have successfully authenticated Your identity and You have expressly authorized Us (by way of an affirmative and revocable election) to do so. The version of Your Alerts that We provide to the Reviewer, will be the same as the Alerts You see, but no other credit information will ever be shared or made available to the Reviewer, even if You request that We do so. You will not have the opportunity to review the Shared Version of Your Alerts before We share it with the Reviewer pursuant to Your authorization. You acknowledge and agree that when You enable the Shared Alerts capability within the Member Center that You are designating Us as Your agent and giving Us Your "written instruction" to obtain from EIS and public records sources the credit file and other information necessary to compile Your Shared Alerts, to create Your Shared Alerts for You, and to make the Shared Version of Your Alerts available to the Reviewer as instructed by You. YOU ACKNOWLEDGE THAT IT IS YOUR RESPONSIBILITY TO EXERCISE SOUND JUDGMENT WHEN DECIDING WHETHER AND WITH WHOM TO SHARE YOUR ALERTS, AND YOU AGREE THAT YOUR INTERACTIONS WITH SUCH REVIEWERS, INCLUDING YOUR ACCESS TO AND USE OF THE FAMILY PLAN PRODUCT, IS AT YOUR OWN RISK. ADDITIONALLY, YOU ACKNOWLEDGE AND AGREE THAT NEITHER WE, NOR ANY OF OUR DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, SUPPLIERS, LICENSORS, AFFILIATED COMPANIES, OR AFFILIATED CREDIT BUREAUS, ARE RESPONSIBLE OR LIABLE TO YOU FOR ANY ACTIONS TAKEN OR DECISIONS MADE BY ANY REVIEWER WITH WHOM YOU HAVE SHARED YOUR ALERTS.

23. MONITORING OF MINOR CHILDREN INCIDENT TO FAMILY PLAN. In the event that You (in Your capacity as the Primary Member) successfully establish Your membership in the Family Plan Product, You will also be eligible to enroll up to four (4) of Your minor children for Child Monitoring. If We are unable to successfully enroll You in Credit Monitoring program, Your entire Product order, including any pending orders to perform Child Monitoring for Your minor children, will be cancelled and You will not receive alerts regarding Your minor children. Child Monitoring Differs from Credit Monitoring. The monitoring that will be performed for your enrolled minor children is different than Credit Monitoring that is available under Our Products for adult Members who are age eighteen (18) or older. Once Your minor children have been successfully enrolled, We will first determine if an Equifax credit report currently exists with respect to each enrolled child. If there is an Equifax credit report for your minor child, We will notify you via email alert within twenty four (24) hours of Us having received the report. If an Equifax credit report does not exist for your minor child, an Equifax credit file will be established and You expressly authorize and instruct Us to place a credit lock on each such file, which prevents most third party access to the minor child's Equifax credit report. Enrollment of Minor Children in Family Plan. As part of Your Family Plan membership, You are entitled to enroll up to four (4) minor children for whom you are the legal parent or guardian by providing the required information and/or documentation including, but not limited to, a valid Social Security number and date of birth for each of Your minor children. In certain circumstances, You may not be permitted to enroll Your minor children on-line. In such circumstances, You will be notified of this event, and We will provide You with additional instructions regarding the steps and additional information needed to take in order for You to enroll Your minor child or children by contacting our Customer Service Center at 1-866-807-7461. Children that have reached the age of seventeen (17) years and nine (9) months are not eligible for Child Monitoring and any attempt on Your part to enroll such a minor child will be denied. Further Certifications or Documents May be Required. We will provide information about a minor child only to a Primary Member who is also the minor child's parent or legal guardian. By enrolling any minor child, You must certify that each such child is under the age of eighteen (18) years of age and You are the parent or legal guardian of each minor child whom You have named on the enrollment forms. We may also require further documentation regarding your status as parent or legal guardian prior to releasing certain information to You. By initiating Child Monitoring, You acknowledge and agree that it is illegal for anyone to obtain credit-related or other personal information concerning a minor child for whom they are not the parent or legal guardian and You further acknowledge and agree that Your enrollment of your minor child requires Us to obtain information about Your child from Equifax Information Services LLC, a credit reporting agency, and that any information about Your minor child that You obtain from Us will be used solely for the purpose of assisting You in protecting Your minor child against actual, suspected or potential fraud. Automatic Suspension. Any minor children You enroll for Child Monitoring will automatically lose their eligibility to remain under the Family Plan Product within seven (7) days before their eighteenth (18th) birthday and all Child Monitoring will automatically cease on or before that date. After this occurs, You will no longer be eligible to receive monitoring of any sort regarding that minor child and all other benefits available to You or Your minor child under the Family Plan Product will likewise cease upon the child attaining the age of eighteen (18).

24. DEBT WISE™/DEBTWATCHERS™ PRODUCT; FAST PAY PRODUCT FEATURE. The Debt Wise Product is also called DebtWatchers(TM) when purchased through Primerica Client Services, Inc. ("Primerica") and is referred to as the "Fast Pay Plan" when included as a Product feature as part of another Equifax Product. All references herein to "Debt Wise" shall refer equally to DebtWatchers and the Fast Pay Plan Product feature, as applicable. What Debt Wise Is. Debt Wise is an information Product that helps You: (i) understand Your existing debt obligations; (ii) develop a plan for paying off the debts that You specify based on information and preferences You input into the Debt Wise Product and the options You select; (iii) monitor Your progress against Your plan, and (iv) update Your plan from time to time What Debt Wise Is Not. By placing Your order for Debt Wise, You acknowledge and agree that Debt Wise: (i) is not a loan product; (ii) does not provide an extension of credit, and is being offered independent of any extension of credit; and (iii) will not eliminate, reduce or settle Your debts, obtain new or different loan terms for You, or improve Your credit record, credit history, credit rating, credit report, credit score or debt-to-income ratio. By placing Your order for Debt Wise, You acknowledge and agree that You will not seek to utilize the Debt Wise Product for any such purpose and that any attempt to do so will result in the termination of Your membership. Your Responsibilities When You Purchase and Utilize Debt Wise: " Your personal financial situation is unique, and You must determine how to best utilize the information you obtain through using the Debt Wise Product. Accordingly, You should consider obtaining additional information from Your accountant or other advisers who are fully aware of Your individual circumstances. " To achieve the maximum benefit from the Debt Wise Product, You must accurately enter and update Your existing debts and debt terms in the Debt Wise Product, follow the plan that You create with the help of the Debt Wise Product, and monitor Your bills and Debt Wise interaction. You are solely responsible for the information that is input into the Debt Wise Product for purposes of creating, monitoring and updating Your plan, including the accuracy and completeness of that information. " You are responsible for including all of the debts that you would like to pay off in your Fast Pay Plan - which may include debts that do not appear on your Equifax Credit Report. Including debts in your Fast Pay Plan will not result in them being added to your Equifax credit file. " You remain at all times responsible for paying Your debts in accordance with the terms of your agreements with your lenders and creditors. " The actual results You achieve towards paying down Your debts, reducing the length of time You will be in debt, and realizing savings in interest payments will vary based upon Your individual circumstances and will depend exclusively upon You following and completing the plan that You create. Debt Wise is an Information Product and We Do Not Provide Credit Counseling, or Financial or Debt Management Advice or Services. By this We mean that: (i) We are not a certified or registered financial planner, and neither We nor the Debt Wise Product provides debt management advice, credit counseling, financial planning or financial counseling; (ii) We will not be responsible for making any debt payments on Your behalf, We will not act as a conduit for Your payments to Your creditor(s), and We will not negotiate or attempt to negotiate with Your creditor(s) to settle debt, obtain new or different loan terms, or for any other reason; and/or (iii) We do not guarantee, promise, or imply that Debt Wise will eliminate or reduce Your debts or improve Your credit record, credit history, credit rating, credit report, credit score or debt-to-income ratio.

25. IDENTITY REPORT™ PRODUCT. The Identity Report Product is a Product that allows individuals to share a verification of their identity and their credit standing with others. When You obtain Your Identity Report and share Your Identity Report with someone else, You are the "Subject". When someone else makes their Identity Report available to You for You, You are the "Reviewer." When You order Your own Identity Report, You will receive two versions for Your review: a Subject Version and a Shared Version. Both versions will be available to You to view for 30 days from the date that You first order Your Identity Report. The corresponding Subject Version of Your Identity Report will include a snapshot of Your identity information, a high-level summary of Your credit score range (if available), and a copy of Your Equifax Credit Report. We will not provide the Subject Version of Your Identity Report to any individuals other than You. The Shared Version of Your Identity Report will include a summary version of Your identity information and Your credit score range (if available), but will not include Your Equifax Credit Report. We will not make the Shared Version of Your Identity Report available to other individuals unless You decide that You want to share it and instruct Us to do so on Your behalf. You will have the opportunity to review the Shared Version of Your Identity Report before You decide if You want to share it with anyone else. You acknowledge and agree that when You order Your Identity Report, You are designating Us as Your agent and giving Us Your "written instruction" to obtain and collect from EIS and public records sources the credit file and other information necessary to compile Your Identity Report, to create Your Identity Report for You, and to make the Shared Version of Your Identity Report available to those individuals as instructed by You. YOU ACKNOWLEDGE THAT IT IS YOUR RESPONSIBILITY TO EXERCISE SOUND JUDGMENT WHEN DECIDING WHETHER AND WITH WHOM TO SHARE YOUR IDENTITY REPORT, AND YOU AGREE THAT YOUR INTERACTIONS WITH SUCH INDIVIDUALS, INCLUDING YOUR

Terms of Use | Equifax

ACCESS TO AND USE OF THE IDENTITY REPORT PRODUCT, IS AT YOUR OWN RISK. ADDITIONALLY, YOU ACKNOWLEDGE AND AGREE THAT NEITHER WE, NOR ANY OF OUR DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, SUPPLIERS, LICENSORS, AFFILIATED COMPANIES, OR AFFILIATED CREDIT BUREAUS, ARE RESPONSIBLE OR LIABLE TO YOU FOR ANY ACTIONS TAKEN OR DECISIONS MADE BY ANY INDIVIDUALS WITH WHOM YOU HAVE SHARED YOUR IDENTITY REPORT.

26. FINANCIAL ALERTS. Certain of Our Products offer You the opportunity to activate Our Financial Alerts feature, which allow Members to receive Financial Alerts concerning certain activity regarding their financial accounts (e.g., checking accounts, credit cards, etc.) These alerts can be customized by the Member to reflect the accounts to be monitored and the thresholds for the creation of alerts. In order to enable Us to provide You with Your Financial Alerts (if available under Your Plan), You must activate this Product Feature and as part of this process, You must agree to provide certain information to Us that is needed in order for Us to access third-party financial websites and the information regarding Your accounts and all financial relationships designated by You (each a "Third-Party Account"). By providing Us with the foregoing information, You represent and warrant to Us that You are the legal owner of and have the right to authorize and permit Us to access each of the Third-Party Accounts that You so designate, and You expressly authorize Us to obtain and utilize such information solely for the purpose of providing You with Your Financial Alerts. By activating Your Financial Alerts Product Feature, You acknowledge and agree that: (i) Your relationship with each Third-Party Account provider is fully independent of Your relationship with Us and Your use of the Financial Alerts and the Products to which they relate; (ii) We do not have a contractual or operational relationship with your Third-Party Account providers; and (iii) Our responsibility with respect to the Financial Alerts and the Product to which it relates is limited to solely to providing You with information made available by your Third-Party Account providers. Any questions regarding data accuracy with respect to a Financial Alert must be raised directly with the Third-Party Account provider. As a condition of Your activation of the Financial Alerts Product Feature, You expressly acknowledge and agree that We shall not be responsible for any act or omission by any Third-Party Account provider, including without limitation any modification, interruption or discontinuance of any Third-Party Account. NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, YOU ACKNOWLEDGE AND AGREE THAT WHEN WE ARE ACCESSING AND RETRIEVING INFORMATION FROM ANY THIRD-PARTY ACCOUNT IN ORDER TO PROVIDE A FINANCIAL ALERT, WE ARE ACTING AS YOUR AGENT, AND NOT AS THE AGENT OF OR ON BEHALF OF THE THIRD PARTY. YOU AGREE THAT WE AND OUR AFFILIATES AND SERVICE PROVIDERS SHALL BE ENTITLED TO RELY UPON THE FOREGOING AUTHORIZATION GRANTED BY YOU HEREIN AND YOU AGREE THAT WE SHALL NOT BE LIABLE FOR ANY COSTS, FEES, LOSSES OR DAMAGES OF ANY KIND INCURRED AS A RESULT OF (1) OUR ACCESS TO THE THIRD-PARTY ACCOUNTS; (2) OUR RETRIEVAL OF OR INABILITY TO RETRIEVE INFORMATION FROM THE THIRD-PARTY ACCOUNTS; (3) ANY INACCURACY, INCOMPLETENESS OR MISINFORMATION CONTAINED IN INFORMATION RETRIEVED FROM THE THIRD-PARTY ACCOUNTS; OR (4) ANY CHARGES IMPOSED BY THE PROVIDER OF ANY THIRD-PARTY ACCOUNT.

27. SCORE POWER® AND SCORE WATCH® PRODUCTS. Fair Isaac Corporation and Equifax jointly provide certain of the Products available through this Site. If You purchase these Products You will obtain, among other things: (i) a copy of Your Equifax Credit Report™; (ii) Your BEACON®/FICO® credit score, calculated from the information contained in Your Equifax Credit Report™; and (iii) an explanation of how a creditor is likely to view Your score and the major reasons You scored as You did. These Products feature the "FICO Score", which is produced using a proprietary credit score model developed by Fair Isaac Corporation. All such Products are clearly identified in the Product literature contained within the Site and You should carefully consider the different credit scores that are associated with Our Products prior to purchasing any Product.

28. PRIVACY MONITORING. Privacy Monitoring, powered by Reputation.com, Inc., is a Product that provides online reputation management. Privacy and Reputation Advocate. If You purchase this Product, You authorize Us to be Your privacy and/or reputation advocate. As Your privacy advocate, You authorize Us to use Your information to search the Internet and the "deep Web" using any tools available and to find and, if purchased as part of Your Product selection, remove Your personal information from the Internet. As Your reputation advocate, You authorize us to use optimization techniques to suppress unwelcome content and promote welcome content above unwelcome content on Internet search engines. In addition, You authorize Us to contact third parties, including creators or aggregators of personal information or unwelcome content, hosts of personal information or unwelcome content, and other parties who might have control or authority over such content, and to take such actions as We deem appropriate to remove or suppress such content. You authorize us to take such action on Your behalf and to identify Ourselves as acting on Your behalf. You recognize that such contact and techniques may have unpredictable side effects, including but not limited to negative responses from others. You agree to provide the information required for the Product and understand that, in most cases, the higher the quality of information provided by You, the better the results You will experience. Your Responsibilities When You Purchase and Utilize Reputation.Com: * You agree that you will not use the Product for illegal activities or in violation of the rights of any third party. * You will not: request data on any person other than yourself, impersonate any person or entity, falsely state or otherwise misrepresent your affiliation with any person or entity, or use or provide any fraudulent, misleading or inaccurate information.

29. PRIVACY. By submitting Your order, You acknowledge receipt of Our Privacy Policy and agree that We may use and share Your personal information in accordance with Our Privacy Policy, which is incorporated by reference into this Agreement.

30. OWNERSHIP. This Site contains copyrighted material and any information that You retrieve is copyrighted by its owner. You may not remove, alter or cover any copyright or other proprietary notices placed on this site or on products or related materials acquired through this site. We, collectively or individually, retain ownership of all intellectual property rights in the Products and this Site, including without limitation any information, materials, text, graphics, images, logos, site design, and the selection, assembly, and arrangement of the Site ("content"). The content may not be copied, distributed, displayed, modified, reproduced, performed, published or reverse engineered in whole or in part without Our prior written permission.

31. QUESTIONS ABOUT YOUR CREDIT FILE OR SCORE. Equifax Information Services LLC ("EIS") is the Nationwide Credit Reporting Company that maintains the credit file information used to provide the Products, except for any non-Equifax credit files that may be used in Products. Any questions or disputes regarding the accuracy of any information in Your Equifax Credit Report (also used in some other Products) must be directed to, and will be handled by, EIS. EIS IS REQUIRED BY LAW TO GIVE YOU A COPY OF YOUR CREDIT FILE UPON REQUEST, AT NO CHARGE OR FOR A NOMINAL FEE. IF YOU BELIEVE YOUR EQUIFAX CREDIT REPORT CONTAINS INACCURATE OR INCOMPLETE INFORMATION, YOU MAY REQUEST, AT NO CHARGE TO YOU, THAT EIS RESEARCH THE INFORMATION CONTAINED IN YOUR EQUIFAX CREDIT REPORT. Further, if You believe or suspect that You have been the victim of identity theft, You may request, at no charge to you, that EIS place an alert on Your Equifax credit report. You do not have to purchase a Product in order to receive a copy of Your credit file from EIS or to dispute information contained in it, or to request that EIS place an alert on Your credit file. To dispute information or place an alert in Your credit file, You may contact EIS at the number on Your Equifax Credit Report, or You may contact Us and we will transfer or direct you to the appropriate EIS representative. To obtain more information about Your rights, go to the Credit Education Page on Our Site and click on "Summary of FCRA Rights."

32. ADDITIONAL CREDIT REPORT RELATED DISCLOSURES. You have a right to obtain a free copy of your credit report once every 12 months from each of the nationwide consumer reporting agencies. To request your free annual credit report, you may go to www.annualcreditreport.com, or call 1-877-322-8228, or complete the Annual Credit Report Request Form and mail it to: Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA 30348-5281. You can obtain additional copies of your credit report from a credit bureau, for which you may be charged a reasonable fee. There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days. The credit bureau must provide someone to help you interpret the information in your credit file. You are entitled to receive a free copy of your credit report if you are unemployed and intend to apply for employment in the next 60 days, if you are a recipient of public welfare assistance, or if you have reason to believe that there is inaccurate information in your credit report due to fraud. For more information You may also contact the Federal Trade Commission ("FTC") by calling the FTC toll free - 1-877-FTC-HELP or visit their website: www.ftc.gov. In addition, the states of MA, VT, CO, NJ, MD and ME permit consumers to obtain one credit report per reporting agency per year, free of charge and the state of GA permits consumers to obtain two credit reports per credit reporting agency per year, free of charge. None of Our Products are intended to substitute for any free credit report or disclosure that any credit reporting agency or bureau is required by law to provide to You.

33. NO WARRANTY; LIMITATION OF LIABILITY. WE HAVE NO REASON TO BELIEVE THAT ERRORS EXIST IN THE PRODUCTS FURNISHED HEREUNDER. HOWEVER, MUCH OF THE DATA CONTAINED IN THE PRODUCTS IS PROVIDED TO US BY OTHERS AND THEREFORE WE DO NOT CONTROL THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THE PRODUCTS. IF WE SELL YOU A PRODUCT PROVIDED BY A SUPPLIER, THAT SUPPLIER IS SOLELY RESPONSIBLE FOR THE ACCURACY AND COMPLETENESS OF THAT PRODUCT. NEITHER WE, NOR ANY OF OUR DIRECTORS, OFFICERS, AGENTS, EMPLOYEES,

SUPPLIERS, LICENSORS, AFFILIATED COMPANIES, OR AFFILIATED CREDIT BUREAUS ("AFFILIATED PERSONS") WARRANT THE CORRECTNESS, COMPLETENESS, CURRENTNESS, OR ANY OTHER ASPECT OF ANY PRODUCT OR INFORMATION CONTAINED IN ANY PRODUCT IN ANY WAY. THE PRODUCTS ARE PROVIDED "AS IS", AND NO WARRANTY, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THOSE OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IS MADE. NEITHER WE NOR ANY OF OUR AFFILIATED PERSONS WILL BE LIABLE TO YOU (OR ANY OF YOUR MINOR CHILDREN) FOR ANY LOSS OR INJURY ARISING OUT OF OR CAUSED, IN WHOLE OR IN PART, BY ANY NEGLIGENT ACTS OR OMISSIONS OF ANY SUCH PERSON IN PREPARING, REPORTING OR DELIVERING THE PRODUCTS, PROVIDING AUTHENTICATION SERVICES, OR IN DOING ANYTHING RELATED THERETO. NEITHER WE NOR THE AFFILIATED PERSONS WILL BE LIABLE TO YOU (OR ANY OF YOUR MINOR CHILDREN) FOR DIRECT, SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR EMOTIONAL DISTRESS DAMAGES (INCLUDING BUT NOT LIMITED TO LOST PROFITS OR OPPORTUNITIES, BUSINESS INTERRUPTION AND LOSS OF PROGRAMS OR DATA) IN CONNECTION WITH YOUR USE OF THIS SITE, ANY USE OR RELIANCE UPON INFORMATION FOUND AT THIS SITE OR PROVIDED BY US OR ANY PRODUCT PROVIDED AT THIS SITE OR THROUGH ANY OTHER MEDIUM, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. TO THE EXTENT APPLICABLE LAW DISALLOWS ANY DISCLAIMERS OR LIMITATIONS IN THIS AGREEMENT, SUCH DISCLAIMERS OR LIMITATIONS MAY NOT APPLY TO YOU.

34. LIMITATION OF LIABILITY; NOTICE OF CLAIMS. If, notwithstanding the foregoing Section, any Affiliated Person is held to be liable to You, the amount of such liability shall not exceed the lesser of (i) the sum of twenty dollars ($20.00) or (ii) the amounts paid by You under this Agreement, in the twelve (12) months preceding the claim, for the specific Products giving rise to the claim. If You desire to make a claim against any Affiliated Person, You must give the applicable party notice of the claim within three (3) months of becoming aware of the circumstances giving rise to the claim or, if earlier, three (3) months from the time You should reasonably have become aware of such circumstances. If You do not, no Affiliated Person will be liable to You for the claim.

35. AGREEMENT TO RESOLVE ALL DISPUTES BY BINDING INDIVIDUAL ARBITRATION. PLEASE READ THIS ENTIRE SECTION CAREFULLY BECAUSE IT AFFECTS YOUR LEGAL RIGHTS. THIS SECTION PROVIDES THAT EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR THAT REPLACES THE RIGHT TO GO TO COURT AND MAY LIMIT YOUR RIGHTS TO DISCOVERY OR TO APPEAL. IT FURTHER PROVIDES THAT YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE.

Binding Arbitration. Either You or Equifax may, without the other's consent, elect mandatory, binding arbitration of any Claim (as defined below) raised by either You or Equifax against the other. As used in this arbitration provision, the term "Claim" or "Claims" means any claim, dispute, or controversy between You and Us regarding any aspect of Your relationship with Equifax, including but not limited to any Claim arising from these Terms of Use or arising from Your use of the Products or this Site or any information You receive from Us, whether based on contract, statute, common law, regulation, ordinance, tort, or any other legal or equitable theory regardless of what remedy is sought. Additionally, for purposes of this arbitration provision "Equifax" or "Us" will include Equifax's Suppliers, parents, subsidiaries, affiliates, successors, assigns, employees, agents, and any third party providing products, services, or benefits in connection with a Product provided to You. The term "Claim" shall have the broadest possible construction. If You or We elect arbitration, the arbitration will be conducted as an individual arbitration. Neither You nor We consent or agree to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed with arbitration on a class or representative basis. No arbitration will be consolidated with any other arbitration proceeding without the consent of all parties. This arbitration provision applies to and includes any Claims made and remedies sought as part of any class action, private attorney general action, or other representative action. By consenting to submit Your Claims to arbitration, You will be forfeiting Your right to share in any class action awards, including class claims where a class has not yet been certified, even if the facts and circumstances upon which the Claims are based already occurred or existed. As an exception to the arbitration provision, You retain the right to pursue in small claims court any Claim that is within that court's jurisdiction and proceed on an individual basis. Right to Opt-Out of this Arbitration Provision. IF YOU DO NOT WISH TO BE BOUND BY THE ARBITRATION PROVISION, YOU HAVE THE RIGHT TO EXCLUDE YOURSELF. Opting out of the arbitration provision will have no adverse effect on your relationship with Equifax or the delivery of Products to You by Equifax. In order to exclude Yourself from the arbitration provision, You must notify Equifax in writing within 30 days of the date that You first accept these Terms of Use on the Site (for Products purchased from Equifax on the Site). If You purchased Your Product other than on the Site, and thus these Terms of Use were mailed, emailed or otherwise delivered to You, then You must notify Equifax in writing within 30 days of the date that You receive the Terms of Use. You may opt-out by writing to Equifax Consumer Services LLC, Attn.: Arbitration Opt-Out, P.O. Box 105496, Atlanta, GA 30348. Your written notification to Equifax must include Your name, address, and Equifax User ID, as well as a clear statement that You do not wish to resolve disputes with Equifax through arbitration. If You have previously notified Equifax that You wish to opt-out of arbitration, You are not required to do so again. Any opt-out received after the opt-out deadline set forth above will not be valid and You must pursue your Claim in arbitration or small claims court. Initiation of Arbitration. The party filing a Claim in arbitration must select either the National Arbitration Forum ("NAF") or the American Arbitration Association ("AAA") to administer the arbitration. The arbitration organization that is selected will apply its rules, codes, or procedures in effect at the time the arbitration is filed, unless any portion of those rules, codes, or procedures is inconsistent with any specific terms of this arbitration provision or these Terms of Use, in which case the terms of this arbitration provision and these Terms of Use will govern. These rules and procedures may limit the amount of discovery available to You or Us. Rules and forms may be obtained from and any Claims filed with, either: (1) National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405, www.arb-forum.com (2) American Arbitration Association, 335 Madison Avenue, Floor 10, New York, New York 10017, www.adr.org Arbitration Procedures. The arbitration shall be before a single arbitrator. The arbitrator will apply applicable substantive law, including the applicable statute of limitations, and will honor claims of privilege recognized at law. The arbitrator will have the power to award to a party any damages provided for under applicable law, but in so doing, the arbitrator shall apply substantive law regarding damages as if the matter had been brought in court, including without limitation, the law on punitive damages as applied by the United States Supreme Court. This agreement to arbitrate involves interstate commerce and is made pursuant to the Federal Arbitration Act, 9 U.S.C. sections 1-16 (the "FAA"). Any claim or dispute as to the enforceability of this arbitration provision's restrictions on your right to participate in or pursue a class action or class wide arbitration shall be decided by a court and not an arbitrator, and shall be brought only in a United States District Court located in Atlanta, Georgia, or in any court within the Georgia State or Superior Court System located in Fulton County, Georgia. Payment of Arbitration Fees and Costs. In the event You file a Claim in arbitration in accordance with these provisions, We will advance all arbitration filing fees and arbitrator's costs if You ask that We do so, in writing, prior to the commencement of the arbitration. The payment of any such fees will be made directly by Us to the arbitration administrator selected by You pursuant to this arbitration provision. Such requests should be mailed to Equifax Consumer Services LLC, Attn: Request for Payment of Arbitration Filing Fees, P.O. Box 105496, Atlanta, GA 30348. If Equifax prevails in the arbitration, then the arbitrator shall have the authority to require that You reimburse Equifax for the fees and costs advanced, but only to the extent such fees and costs would be recoverable in a judicial action. If You prevail in the arbitration of any Claim against Us, then You will not be required to reimburse Us for any fees you paid to the arbitration organization in connection with the arbitration. You are responsible for all other fees and costs You incur in the arbitration, including attorney's fees and expert witness fees, except that the arbitrator shall have the authority to award attorney's fees and costs to the prevailing party; (i) based on applicable law; (ii) under the rules of the arbitration administrator; or (iii) if the arbitrator rules in Your favor and the arbitrator expressly determines that there is a good reason for requiring Us to pay those fees and costs. Continuation. This arbitration provision shall survive: (i) the termination or changes in the Terms of Use or the relationship between You and Us, including but not limited to the purchase of a new or additional Product by You; and (ii) the termination or changes in Our providing any Product(s) to You.

36. INDEMNIFICATION. You will indemnify and hold Us and the Affiliated Persons harmless from and against actual loss, costs, liabilities and expenses (including reasonable attorneys' fees) resulting from Your breach of this Agreement, Your use of this Site or any Product or any information contained in this Site or provided by Us, or Your infringement of any intellectual property or other right of any person or entity.

37. APPLICABLE LAW. These Terms of Use and their enforcement shall be governed by the laws of the state of Georgia, without regard to conflict of law principles, Federal law, including the FAA, shall govern the arbitrability of all Claims between You and Us pursuant to Section 34 above, including any and all claims or disputes concerning the validity, construction, and performance of the arbitration provision in Section 34 above (except that to the extent state law applies to that issue, the law of Georgia will apply without regard to conflict of law principles).

38. ENTIRE AGREEMENT BETWEEN US. This Agreement constitutes the entire agreement between You and Us regarding the Products and information contained on or acquired through this Site or provided by Us, including through other linked third party Internet sites. In the event that this Agreement shall be translated into any language other than English, then the English language version of the Agreement shall control. This Site may contain hyperlinks or other references to third party Internet sites that Equifax does not own or operate. You may be subject to additional terms and conditions that apply when You use third party Internet sites. You agree that You are responsible for reviewing and understanding any terms and conditions governing any third party Internet site and products and Equifax has no responsibility therefore.

6/17/2014                                              Terms of Use | Equifax

This Agreement takes effect on Your first use of this Site, and it applies to all persons accessing the Site from Your computer, and to all persons using Your User ID, password or PIN. In the event that multiple translations of this Agreement exist, the English language version shall control. The headings used in this Agreement are for convenience only and such headings are not to be used in determining the meaning or interpretation of these terms and conditions of use. You agree that this Agreement is not intended to and does not confer any rights on any persons other than Us and You and the third party beneficiaries referenced in this Section. If any provision of this Agreement is held invalid, unenforceable or void by applicable laws, the remaining portions shall continue in full force and effect. If, however, the class action waiver provision in Section 33 is found to be illegal or unenforceable, then the entire arbitration provision in Section 34 will be unenforceable, and any Claims (as defined in Section 34) will instead be decided by a court. You may not assign this Agreement or the Product (except a gift certificate) to someone else. Unless otherwise explicitly stated, the provisions contained in Sections 3 (Registration; Use of Products), 29 (Ownership), 32 (No Warranty; Limitation of Liability), 33 (Limitation of Liability; Notice of Claims), 34 (Arbitration), 35 (Indemnification), 36 (Applicable Law) and this Section 37 will survive termination of this Agreement and Your access to and use of the Products and the information contained on this Site or provided by Us. Suppliers are third party beneficiaries under this Agreement.

Last Revised: April 9, 2013

*The Equifax Online Privacy Policy and Fair Information Principles is also posted.

---

BACK TO TOP

## Site Terms of Use

These Terms of Use to the access and use of the Equifax Web Sites (collectively, the "Web Site".) Products that are ordered through the Web site are subject to the agreements and terms of service that apply to them and can be accessed when a Product is requested. Further, additional proprietary notices and copyright information may be found on other pages in the Web Site.

Warranty
Equifax does not warrant the completeness, timeliness or accuracy of any of the data and/or programs ("information") available at this web site. to the fullest extent permitted by law, the information is provided "as is" without warranty of any kind, express or implied, including, but not limited to, implied warranties of merchantability, fitness for a particular purpose, title or non-infringement.

Disclaimer
In no event will Equifax or its affiliates be liable to any party for any direct, indirect, special or other consequential damages for any use of or reliance upon the information found at this web site, or on any other linked web site, including, without limitation, lost profits, business interruption, loss of programs or other data, even if Equifax is expressly advised of the possibility of such damages.

Link Policy
You are granted a limited, non-exclusive right to create a hypertext link to this Web Site found at http://www.equifax.com/; provided such link does not portray Equifax and/or its affiliates or any of their respective products and services in a false, misleading, derogatory or otherwise defamatory manner. This limited right may be revoked at any time. You may not use, frame or utilize framing techniques to enclose any Equifax trademark, logo or other proprietary information, including the images found at this Web Site, the content of any text or the layout/design of any page or form contained on a page without Equifax's express written consent. Except as noted above, you are not conveyed any right or license by implication, estoppel, or otherwise in or under any patent, trademark, copyright, or proprietary right of EQUIFAX or any third party.

Confidentiality
Comments, suggestions or materials sent or transmitted to EQUIFAX (collectively "Feedback"), shall be deemed to be non-confidential. Subject to the conditions described on the privacy page of this Web Site, EQUIFAX shall have no obligation of any kind with respect to such Feedback and shall be free to use and distribute the Feedback to others without limitation, including, but not limited to developing and marketing products incorporating such Feedback.

Non-Equifax Sites
EQUIFAX makes no representations, warranties or endorsements with respect to any web site, which may be accessed, from this Web Site. When you access a non-EQUIFAX web site, please understand that Equifax has no control over the content or information at that site. It is your responsibility to protect your system from such items as viruses, worms, Trojan horses and other items of a destructive nature.

Intellectual Property Rights
This Web Site contains many of the valuable trademarks, service marks, names, titles, logos, images, designs, copyrights and other proprietary materials owned, registered and used by Equifax Inc. and its affiliated companies, including but not limited to, the registered mark "Equifax"; any unauthorized use is strictly prohibited and all rights in same are reserved by Equifax Inc. and its affiliated companies. Other products and company names mentioned in the Site may be the trademarks of their respective owners. Equifax, Inc. is licensed under the following, and related Ronald A. Katz Technology Licensing, L.P. United States Patents: 5,561,707; 5,828,734; 5,684,863; 5,815,551; 5,974,120; 5,917,893; 5,898,762; and others.

Equifax Interactive Services
Certain areas of the Web Site contain interactive services, where visitors are permitted to post content for publication on the Web Site.Please carefully read the following Terms and Conditions of Use ("Terms of Use") before using the Equifax Personal Finance Blog or Equifax Technology and Analytical Services Blog (collectively, the "Interactive Sites").By using the Interactive Sites, you agree to follow and be bound by these Terms of Use, which govern your use of the Interactive Sites. Nothing contained in these Terms of Use is intended to modify or amend any other written agreement, if any, that may currently be in effect between you and Equifax with regard to matters other than your use of the Interactive Sites.Equifax may periodically modify these Terms of Use, and any such modifications will be effective immediately upon posting. We suggest that you periodically check these Terms of Use for such modifications. If you do not agree to the Terms of Use, do not use the Interactive Sites.

The materials on the Interactive Sites are for information, education, and entertainment purposes only and you should not construe any information provided on the Interactive Sites as legal, tax, investment or other advice. In exchange for using any of the information contained in the Interactive Sites, you agree not to hold Equifax or its third party information providers liable for any possible claim for damages arising from any decision you may make based, in whole or in part, on the information contained in the Interactive Sites. Please note that all data and other materials contained in the Interactive Sites are provided by third parties are believed by Equifax to be provided by reliable third sources, but Equifax does not guarantee and is not responsible for the accuracy, timelines or suitability for use of any such data.

You agree that you are solely responsible for all information, data, content, messages, quotations and any other materials that you upload, post, e-mail, transmit or otherwise make available via the Interactive Sites (collectively, "User Content"). By submitting User Content you represent and warrant that you own all right, title and interest to such User Content. Equifax does not claim ownership of any User Content that you may submit or otherwise make available to the Interactive Sites, but as a condition of posting User Content you grant Equifax a perpetual, worldwide, irrevocable, nonexclusive, royalty-free and transferable right and license to use, store, modify, publish, display, broadcast, sell, reproduce and create derivative works from any User Content you submit.

The Interactive Sites are owned and operated by Equifax Inc., and all of its subsidiaries and affiliates (collectively, "Equifax"). Equifax may modify, suspend, discontinue or restrict the use and availability of any portion of the Interactive Sites at any time, without notice or liability. Your use of the Interactive Sites may be monitored by Equifax and used for Equifax's internal business purposes, without liability. For a complete listing of all Terms of Use that govern your use of the Interactive Sites, please review the Terms in

6/17/2014                                                 Terms of Use | Equifax

their entirety above.

The Equifax Online Privacy Policy and Fair Information Principles is also posted.

BACK TO TOP

| HOT TOPICS | SECURITY | RESOURCES | MORE | CONNECT WITH US | CUSTOMER SUPPORT |
|---|---|---|---|---|---|
| Credit Reports | Security Breach Alerts | Videos | Careers | Find us on Facebook | Business |
| ACA | | Product Sheets | Sign up for a Service | Follow us on Twitter | Personal Solutions |
| Risk | | Infographics | Pay Invoice | Visit us on LinkedIn | |
| Analytics | | Insights | | | |
| Employment Data | | | | | |

**EFX**

© 2014 Equifax, Inc. All rights reserved

Equifax and the Equifax marks used herein are
registered trademarks of Equifax, Inc. Other
product and company names mentioned herein are
property of their respective owners.

Privacy Policy | Terms of Use | FACT Act | SiteMap

INFORM ❯ ENRICH ❯ EMPOWER™

# EXHIBIT "B"

(NAF settlement with MN Attorney General)



# STATE OF MINNESOTA
### OFFICE OF THE ATTORNEY GENERAL

LORI SWANSON
ATTORNEY GENERAL

102 STATE CAPITOL
ST. PAUL, MN 55155
TELEPHONE: (651) 296-6196

**For Immediate Release**
July 19, 2009

**Contact:** Ben Wogsland at: (651) 296-2069
(612) 818-0965 (pager)

## NATIONAL ARBITRATION FORUM
## BARRED FROM CREDIT CARD AND CONSUMER ARBITRATIONS
## UNDER AGREEMENT WITH ATTORNEY GENERAL SWANSON
### *Swanson Also Wants Congress to Ban "Fine Print" Forced Arbitration Clauses*

Minnesota Attorney General Lori Swanson and the National Arbitration Forum—the country's largest administrator of credit card and consumer collections arbitrations—have reached an agreement that the company would get out of the business of arbitrating credit card and other consumer collection disputes.

"I am very pleased with the settlement. To consumers, the company said it was impartial, but behind the scenes, it worked alongside credit card companies to get them to put unfair arbitration clauses in the fine print of their contracts and to appoint the Forum as the arbitrator. Now the company is out of this business," said Swanson.

Swanson sued the National Arbitration Forum on Tuesday, alleging that the company--which is named as the arbitrator of consumer disputes in tens of millions of credit card agreements--hid from the public its extensive ties to the collection industry. The lawsuit alleged that the Forum told consumers and the public that it is independent and neutral, operates like an impartial court system, and is not affiliated with and does not take sides between the parties. The lawsuit alleged that the Forum worked behind the scenes, however, to convince credit card companies and other creditors to insert arbitration provisions in their customer agreements and then appoint the Forum to decide the disputes. The suit also alleged that the Forum has financial ties to the collection industry. The suit alleged that the company arbitrated 214,000 consumer arbitration claims in 2006, nearly 60 percent of which were filed by laws firms with which the Forum is linked through ties to a New York hedge fund.

Under the settlement, the National Arbitration Forum will, by the end of the week, stop accepting any new consumer arbitrations or in any manner participate in the processing or administering of new consumer arbitrations. The company will permanently stop administering arbitrations involving consumer debt, including credit cards, consumer loans, telecommunications, utilities, health care, and consumer leases.

Credit card companies, banks, retail lenders, and cell phone companies increasingly place—in the fine print of their consumer agreements—what are known as "mandatory predispute arbitration clauses." Through these clauses, the consumers waive, in advance, their

right to have their day in court if a dispute arises. Instead, the consumer agrees—usually without knowing it—that any dispute will be resolved by an arbitrator selected by the credit card company or other creditor. Credit card companies are among the most prolific users of mandatory arbitration clauses. Just by keeping a credit card, the consumer agrees to the terms and conditions of the card, even if the arbitration provision was sent to the consumer after the card was issued. As a result of mandatory arbitration clauses, which appear in tens of millions of consumer agreements, hundreds of thousands of consumer disputes are resolved each year not by a judge or jury, but by a private arbitration system.

Swanson said that late this week she accepted an invitation from Congressman Dennis Kucinich, Chairman of the Congressional Committee on Oversight and Government Reform, to testify before the Committee this coming Wednesday in Washington, D.C. She said she will ask Congress to prohibit the use of mandatory pre-dispute arbitration clauses in consumer contracts.

"The playing field is tilted against the ordinary consumer when credit card companies bury unfair terms like forced arbitration clauses in fine print contacts. Congress should change that," said Swanson.

Swanson also announced that she sent a letter to the American Arbitration Association asking it to play a leadership role by ceasing to accept arbitration filings on consumer credit and collection matters arising out of mandatory pre-dispute arbitration clauses.

Swanson noted that the City of San Francisco is in litigation with the Forum and that other state Attorneys General have contacted her about these issues since the announcement of the lawsuit. "I am very pleased with the results of our lawsuit. It is good for consumers that this company will no longer be able to administer credit card and consumer debt collection arbitrations. I hope other jurisdictions will use whatever authority they have to look at other possible remedial relief in this area," said Swanson.

The settlement allows the Company to continue to arbitrate internet domain name disputes (which the company handles under an appointment from the Internet Corporation for Assigned Names and Numbers (ICANN)), personal injury protection claims (which the company performs under appointment and supervision under the New Jersey state government), and cargo disputes (which the company performs under rules established by the U.S. Department of Transportation). These areas were not part of the lawsuit, and the company performs the work under the supervision of government or non-government organizations (NGOs). Accordingly, the settlement does not affect this very limited activity.

The Consent Decree and amendatory letter are attached.

—30—

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

Case Type: Other Civil
(Consumer Protection)

State of Minnesota by its Attorney General,
Lori Swanson,

               Plaintiff,

vs.

National Arbitration Forum, Inc.,
National Arbitration Forum, LLC, and
Dispute Management Services, LLC, d/b/a
Forthright,

               Defendants.

Court File No. 27-CV-09-18550
Judge John L. Holahan

**CONSENT JUDGMENT**

WHEREAS, Plaintiff State of Minnesota, by and through its Attorney General, Lori Swanson ("State"), filed a Complaint in this matter on July 14, 2009 ("Complaint") against National Arbitration Forum, Inc., National Arbitration Forum, LLC, and Dispute Management Services, LLC, d/b/a Forthright (hereinafter, collectively, the "NAF Entities") (the State, and the NAF entities are hereinafter collectively referred to as the "Parties");

WHEREAS, this Consent Judgment shall not be construed as an admission of wrongdoing or liability by the NAF Entities;

NOW, THEREFORE, in the interest of resolving this action, the State and the NAF Entities hereby stipulate and consent to entry of this Consent Judgment, as set forth below:

1.      The purpose of this Consent Judgment is to require the complete divestiture by the NAF Entities of any business related to the arbitration of consumer disputes.

2.     The term "Consumer Arbitration" means any arbitration involving a dispute between a business entity and a private individual which relates to goods, services, or property of any kind allegedly provided by any business entity to the individual, or payment for such goods, services, or property.  The term includes any claim by a third party debt buyer against a private individual.  It does not include, however, the arbitration of internet domain name disputes on behalf of the Internet Corporation for Assigned Names and Numbers (ICANN), the processing of personal injury protection (PIP) disputes, the processing of shipping or storage disputes under 49 CFR § 375.211, or arbitrations where a NAF Entity is appointed and supervised by a government entity.

3.     On or after July 24, 2009, no NAF Entity shall:

        a.     Accept any fee for processing any new Consumer Arbitration.

        b.     Administer or process any new Consumer Arbitration.

        c.     In any manner participate in any new Consumer Arbitration.

        d.     Attempt to influence the outcome of any arbitration proceeding currently pending before it.

4.     The NAF Entities shall not engage in any deceptive practices, or make any false or misleading statements, in violation of Minn. Stat. §§ 325F.69, subd. 1; 325D.44, subd. 1; and 325F.67.

5.     The NAF Entities shall pay investigative costs to the State of Minnesota within ten days of the date this Consent Judgment is signed.  Notwithstanding this payment, the NAF Entities shall also pay the State of Minnesota an amount equal to any amount paid to the City of San Francisco over the next six months, in excess of the City's actual investigative expenses and attorneys' fees.

6.   The Parties have read this Consent Judgment and voluntarily agree to its entry.

7.   In consideration of the stipulated relief, the sufficiency of which is acknowledged, the Office of the Attorney General, by execution of this Consent Judgment, hereby fully and completely releases the NAF Entities, including all of their past and present agents, employees, officers, directors, subsidiaries, shareholders, and affiliates, of any and all claims of the Attorney General connected with or arising out of the allegations in the State's Complaint in the above-captioned action, up to and including the date of this Consent Judgment.

8.   Promptly after receiving notice that the Court executes this Consent Judgment, the State shall voluntarily dismiss the above-captioned action pursuant to Minnesota Rule of Civil Procedure 41.01(a).

9.   The Parties shall cooperate to implement and facilitate this Consent Judgment, including the exchange of information reasonably necessary for that purpose or to confirm the NAF Entities' compliance with this Consent Judgment.

10.   Any failure by any Party to this Consent Judgment to insist on performance by any other Party of any provision of this Consent Judgment shall not be deemed a waiver of any of the provisions included herein.

11.   The Parties agree to bear their own costs and fees in this matter.

12.   Each Party participated in the drafting of this Consent Judgment, and each agrees that the Consent Judgment's terms may not be construed against or in favor of any Party by virtue of draftsmanship.  Each signatory further agrees they have authority to enter into this Consent Judgment.

13.     This Consent Judgment, including any issues relating to interpretation or enforcement, shall be governed by the laws of Minnesota.  The Court shall retain jurisdiction over this matter to enforce the terms of this Consent Judgment.

Dated: _____7/17/09_____

National Arbitration Forum, Inc.

By: _____
Its _____CHAIR_____

Dated: _____7/17/09_____

National Arbitration Forum, LLC

By: _____
Its _____Vice Chair_____

Dated: _____7/17/09_____

Dispute Management Services, LLC, d/b/a Forthright

By: _____
Its _____CEO_____

Dated: _7/17/09_____

LORI SWANSON
ATTORNEY GENERAL
STATE OF MINNESOTA

_____
Lori Swanson

IT IS SO ORDERED.

Dated: _____

BY THE COURT:

_____
John L. Holahan
Hennepin County District Court Judge

LET JUDGMENT BE ENTERED ACCORDINGLY.

4

July 17, 2009

Edward Anderson
Chairman of the Board
National Arbitration Forum, Inc.

Re:     **Consent Judgment Between the State of Minnesota, by its Attorney General, Lori Swanson, and the National Arbitration Forum, Inc., National Arbitration Forum, LLC, and Dispute Management Services, LLC d/b/a Forthright dated July 17, 2009**

If, after two years (or one year, if special master Short concludes that such early modification will be in the interests of justice), a signatory to the Consent Judgment believes that consumers will not be harmed by a modification of this Consent Judgment, a signatory may petition former federal Magistrate Judge Brian Short for a determination that consumers will not be harmed as a result of the modification. If Mr. Short makes such a determination, this consent judgment may be modified. In no event shall this Consent Judgment be modified to allow a signatory to administer or process, or in any manner participate in the administration or processing of, arbitrations involving an individual consumer and business entity where the underlying dispute involves consumer debt (including debt bought or acquired by third parties), credit cards, consumer loans, telecommunications services, utilities, health care services, or consumer leases.

Sincerely,

LORI SWANSON
Attorney General

# EXHIBIT "C"

**(Demand for Arbitration)**

# AMERICAN ARBITRATION ASSOCIATION
## SUPPLEMENTARY PROCEDURES FOR
## CONSUMER-RELATED DISPUTES
### *(FOR USE ONLY IN CALIFORNIA)*

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Case Filing Services at 1-877-495-4185, if you have any questions regarding the waiver of administrative fees.

| **How to file a claim; consumers should:** | **How to file a claim; businesses should:** |
|---|---|
| • Fill out this form and retain one copy for your records.<br>• Mail a copy of this form and your check or money order made payable to the AAA, to:<br> AAA's Case Filing Services, 1101 Laurel Oak Road Suite 100, Voorhees, NJ 08043. Please consult Section C-8 of the *Supplementary Procedures for Consumer-Related Disputes* for the appropriate fee.<br>• Send a copy of this form to the business. | • Fill out this form and retain one copy for your records.<br>• Mail a copy of this form and your check or money order made payable to the AAA, to:<br> AAA's Case Filing Services, 1101 Laurel Oak Road Suite 100, Voorhees, NJ 08043. Please consult Section C-8 of the *Supplementary Procedures for Consumer-Related Disputes* for the appropriate fee.<br>• Send a copy of this form to the consumer by registered mail, return receipt requested. |

**1**  How is this claim being filed? Check only one.

[x] By request of the consumer (A copy of the arbitration agreement **must** be attached. A copy of this form **must** also be sent to the business)

[ ] By request of the business (A copy of the arbitration agreement **must** be attached. A copy of this form **must** also be sent to the consumer by registered mail return receipt requested)

-or-

[ ] By mutual agreement ("submission") of the parties (both parties **must** sign this form)

**2**  Briefly explain the dispute.
Violations of the Fair Credit Reporting Act (FCRA)

**3**  Do you believe there is any money owed to you? [x] Yes     [ ] No     If yes, how much? $3,000.00

**4**  Are you seeking any other relief? [x] Yes     [ ] No
If yes, what is it?
Arbitration costs.

**5**  Preferred hearing locale (if an in-person hearing is held)  Santa Barbara, CA

**6**  Amount enclosed: _____

**7**  Fill in the following information:

| Consumer | Business |
|---|---|
| Name of Consumer  Patrick Halpin | Name of Business Equifax Inc. |
| Address  110 Mary Ave 2-160 | Address  1550 Peachtree Street, NE |
| City/State/Zip Nipomo, CA 93444 | City/State/Zip Atlanta, GA 30309 |
| Telephone  805-310-4161 | Telephone |
| Fax | Fax |
| Email Address  phalpin@outlook.com | Email Address |
| Signature of Consumer | Signature of Business |
| Representative | Representative  Entity C0075536 |
| Firm | Firm  CSC - Lawyers Incorporating Service |
| Address | Address 2710 Gateway Oaks Drive Ste 150N |
| City/State/Zip | City/State/Zip Sacramento, CA 95833 |
| Telephone | Telephone |
| Fax | Fax |
| Email Address | Email Address |

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Equifax Inc (C0075536)
C/O CSC Lawyers Incorporating Service
2710 Gateway Oaks Drive STE 150N
Sacramento, CA 95833

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                           ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
   Daniel L. Reid

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

MAR 0 3 2014

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☑ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7010 0780 0000 4327 3664

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# EXHIBIT "D"

**(AAA Decline to arbitrate with Equifax)**



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

phone: 877-495-4185
fax: 877-304-8457

Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ  08043
www.adr.org

March 7, 2014

**VIA E-MAIL**
Patrick Halpin
110 Mary Avenue 2-160
Nipomo, CA  93444

**VIA USPS**
CSC- Lawyers Incorporating Service Company
Equifax
2710 Gateway Oaks Drive
Suite 150N
Sacramento, CA  95833

Re: 72 420 00513 14
    Patrick Halpin
    v.
    Equifax Inc.


Dear Parties:

The claimant has filed with us a Demand for Arbitration of a dispute arising out of a contract between the above parties.

As the business has previously not complied with our request to adhere to our policy regarding consumer claims, we must decline to administer this claim and any other claims between this business and its consumers. We request that the business remove the AAA name from its arbitration clause so that there is no confusion to the public regarding our decision.

Accordingly, we have closed our file on this matter.

Sincerely,

*Adam Shoneck, Supervisor*
Consumer Filing
877 495 4185 x4646
ConsumerFiling@adr.org

*Supervisor Information: Tara Parvey, 856-679-4602, ParveyT@adr.org*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself [X] )

Patrick Halpin, in Pro Per

**DEFENDANTS** ( Check box if you are representing yourself [ ] )

Equifax Information Services LLC

**(b)** County of Residence of First Listed Plaintiff    Santa Barbara
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Patrick Halpin, in Pro Per

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

By Fax

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- [ ] 1. U.S. Government Plaintiff
- [X] 3. Federal Question (U.S. Government Not a Party)
- [ ] 2. U.S. Government Defendant
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

- [X] 1. Original Proceeding
- [ ] 2. Removed from State Court
- [ ] 3. Remanded from Appellate Court
- [ ] 4. Reinstated or Reopened
- [ ] 5. Transferred from Another District (Specify)
- [ ] 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [X] Yes [ ] No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** [ ] Yes [ ] No     [ ] **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

9 U.S. Code § 4

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| [ ] 375 False Claims Act | [ ] 110 Insurance | [ ] 240 Torts to Land | [ ] 462 Naturalization Application | **Habeas Corpus:** | [ ] 820 Copyrights |
| [ ] 400 State Reapportionment | [ ] 120 Marine | [ ] 245 Tort Product Liability | [ ] 465 Other Immigration Actions | [ ] 463 Alien Detainee | [ ] 830 Patent |
| [ ] 410 Antitrust | [ ] 130 Miller Act | [ ] 290 All Other Real Property | | [ ] 510 Motions to Vacate Sentence | [ ] 840 Trademark |
| [ ] 430 Banks and Banking | [ ] 140 Negotiable Instrument | **TORTS** | **TORTS** | [ ] 530 General | **SOCIAL SECURITY** |
| [ ] 450 Commerce/ICC Rates/Etc. | [ ] 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | [ ] 535 Death Penalty | [ ] 861 HIA (1395ff) |
| [ ] 460 Deportation | | [ ] 310 Airplane | [ ] 370 Other Fraud | **Other:** | [ ] 862 Black Lung (923) |
| [ ] 470 Racketeer Influenced & Corrupt Org. | [ ] 151 Medicare Act | [ ] 315 Airplane Product Liability | [ ] 371 Truth in Lending | [ ] 540 Mandamus/Other | [ ] 863 DIWC/DIWW (405 (g)) |
| [ ] 480 Consumer Credit | [ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.) | [ ] 320 Assault, Libel & Slander | [ ] 380 Other Personal Property Damage | [ ] 550 Civil Rights | [ ] 864 SSID Title XVI |
| [ ] 490 Cable/Sat TV | | [ ] 330 Fed. Employers' Liability | [ ] 385 Property Damage Product Liability | [ ] 555 Prison Condition | [ ] 865 RSI (405 (g)) |
| [ ] 850 Securities/Commodities/Exchange | [ ] 153 Recovery of Overpayment of Vet. Benefits | [ ] 340 Marine | **BANKRUPTCY** | [ ] 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| [ ] 890 Other Statutory Actions | [ ] 160 Stockholders' Suits | [ ] 345 Marine Product Liability | [ ] 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 891 Agricultural Acts | [ ] 190 Other Contract | [ ] 350 Motor Vehicle | [ ] 423 Withdrawal 28 USC 157 | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 871 IRS-Third Party 26 USC 7609 |
| [ ] 893 Environmental Matters | [ ] 195 Contract Product Liability | [ ] 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | [ ] 690 Other | |
| [ ] 895 Freedom of Info. Act | [ ] 196 Franchise | [ ] 360 Other Personal Injury | [ ] 440 Other Civil Rights | **LABOR** | |
| [X] 896 Arbitration | **REAL PROPERTY** | [ ] 362 Personal Injury-Med Malpractice | [ ] 441 Voting | [ ] 710 Fair Labor Standards Act | |
| [ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision | [ ] 210 Land Condemnation | [ ] 365 Personal Injury-Product Liability | [ ] 442 Employment | [ ] 720 Labor/Mgmt. Relations | |
| | [ ] 220 Foreclosure | [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability | [ ] 443 Housing/Accommodations | [ ] 740 Railway Labor Act | |
| [ ] 950 Constitutionality of State Statutes | [ ] 230 Rent Lease & Ejectment | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 445 American with Disabilities-Employment | [ ] 751 Family and Medical Leave Act | |
| | | | [ ] 446 American with Disabilities-Other | [ ] 790 Other Labor Litigation | |
| | | | [ ] 448 Education | [ ] 791 Employee Ret. Inc. Security Act | |

---

**FOR OFFICE USE ONLY:**     Case Number: _____

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:**  Your answers to the questions below will determine the division of the Court to which this case will be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| [ ] Yes  [X] No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | | Western |
| If "no," skip to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | | Southern |
| | ☐ Riverside or San Bernardino | | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a **PLAINTIFF** in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* → | ☐ YES.  Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes  [X] No | | ☐ NO.  Continue to Question B.2. |
| If "no," skip to Question C.  If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.) *check one of the boxes to the right* → | ☐ YES.  Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO.  Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a **DEFENDANT** in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* → | ☐ YES.  Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes  [X] No | | ☐ NO.  Continue to Question C.2. |
| If "no," skip to Question D.  If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.) *check one of the boxes to the right* → | ☐ YES.  Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO.  Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | **A.** Orange County | **B.** Riverside or San Bernardino County | **C.** Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| **D.1.  Is there at least one answer in Column A?** | **D.2.  Is there at least one answer in Column B?** |
|---|---|
| [ ] Yes  [X] No | [ ] Yes  [X] No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E,  below, and continue from there. | Enter "Eastern" in response to Question E,  below. |
| If "no," go to question D2 to the right.  → | If "no," your case will be assigned to the WESTERN DIVISION. |
| | Enter "Western" in response to Question E, below.  ↓ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above:  → | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | [X] Yes   [ ] No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court**?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**    Patrick Halpin    DATE: 07/08/2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |